**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


GLORIA GRENNELL                                                         PLAINTIFF


VS.                                                 CIVIL ACTION NO. 3:07CV3HTW-LRA


GASTROINTESTINAL ASSOCIATES, P.A.                                       DEFENDANT


**MEMORANDUM OPINION AND ORDER**

Before this court is the defendant, Gastrointestinal Associates, P.A.'s ("GIA")

motion for summary judgment brought under the aegis of Rule 56 (b)[1] and (c)[2] of the

Federal Rules of Civil Procedure [docket # 66].  This court has subject matter

jurisdiction over this case pursuant to Title 28 U.S.C. § 1331, federal question.[3]

---

[1]Rule 56 (b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

[2] Rule 56 (c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

[3]Title 28 U.S.C. § 1331 says: The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## I.    Background Facts

Plaintiff Gloria Grennell, an African-American female, began her employment with GIA sometime in November 2002.  GIA is a clinical medical practice and endoscopy center that employs approximately 14 doctors and over 120 staff members. Plaintiff was hired as the Office Manager for the Endoscopy Center.  She was hired by Executive Director Suzanne Windsor (Caucasian).

As earlier stated, GIA also has a Clinical Department.  That department, too, has a Business Office and a Business Office Manager.

Sometime around July 2003, GIA decided to merge the two business offices. This consolidation obviously eliminated the need for one of the two Business Office Managers.  Windsor reportedly met with and considered plaintiff (African-American) and the Clinical Department's Business Manager, Phyllis Channell (Caucasian),for the sole business office position.  Windsor selected plaintiff and soon thereafter Windsor increased plaintiff's job duties.  GIA increased plaintiff's salary.  From July 2003 until mid-2005, GIA says plaintiff performed well in her new position.

In March 2005, Grennell reportedly asked to step down from her position because of stress and her inability to spend time with her son.  In June 2005, Grennell says she asked to step down a second time, to no avail.   According to Grennell, she then voiced her belief to her supervisor, Windsor, that she was being discriminated against because of her race.  Grennell reasoned that race was a factor in Windsor's denial because Phyllils Channell and Cindy Luby, both Caucasians, had been allowed to step down because of family concerns.

Over the course of the next few months, several complaints allegedly were

lodged against plaintiff from both patients and subordinates.  Also, during this brief

period, Grennell was reprimanded for reportedly: (1) failing to abide by the procedure

for requesting paid time off; (2) failing to communicate any instructions as to how tasks

should be completed; and (3) harassing and micro-managing employees.  Shortly

thereafter, Windsor conducted an investigation which eventually led to Grennell's

termination.

## II.    Procedural Facts

Aggrieved by her termination, Grennell lodged a charge of discrimination against

GIA with the Equal Employment Opportunity Commission ("EEOC"), on September 29,

2005.  On or about January 4, 2007, plaintiff commenced this action against GIA

[docket # 1].  Thereafter, with leave of court, plaintiff filed her amended complaint,

alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of

1964, Title 42 U.S.C. § 2000e-2[4] and Title 42 U.S.C. § 1981[5] [docket # 31].

---

[4]Title 42 U.S.C. § 2000e-2(a) declares it unlawful for an employer to discriminate against or deprive an employee of opportunities "because of such individual's race, color, religion, sex, or national origin."

[5]Title 42 U.S.C. § 1981 provides as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

### III.   Legal Standards

**A.     Summary Judgment Standard**

Summary judgment is appropriate when, after considering the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c);  *Bulko v. Morgan Stanley DW, Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  When considering a summary judgment motion, the court must construe the evidence in the light most favorable to the non-movant.  *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006).  To avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.  *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

**B.     Section 1981 & Title VII**

Section 1981 provides that all persons shall have the same rights "as [are] enjoyed by white citizens."  Title 42 U.S.C. § 1981.  Title VII disallows discrimination in hiring or termination of an individual based on his race, color, religion, sex, or national

_____

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

origin.  Title 42 U.S.C. § 20003-2(a)(1).  Like Title VII, Section 1981 prohibits

discrimination in private employment against anyone, regardless of race.  *McDonald v.*

*Santa De Trail Transp. Co.*, 427 U.S. 273, 286-87, 96 S.Ct. 2574, 49 L.Ed.2d 493

(1976).  "The elements of the claims under Title VII and [Section 1981] are identical.

[This court] therefore evaluate[s] both claims using the same analysis."  *Pratt v. City of*

*Houston*, 247 F.3d 601, 605 n. 1 (5th Cir. 2001).

An employee can prove discrimination through direct or circumstantial evidence.

*Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).  Direct

evidence is evidence, which if believed, proves the fact in question without inference or

presumption.  *Jones v. Robinson Prop. Group*, 427 F.3d 987, 992 (5th Cir. 2005).  In the

absence of direct evidence, a plaintiff may rely upon circumstantial evidence to

demonstrate discrimination.  *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir.

2007) (quoting *Roberson*, 373 F.3d at 651).

Claims of racial discrimination based on circumstantial evidence are evaluated

under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);  *Burrell v. Dr. Pepper/Seven Up*

*Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007);  *Rachid v. Jack in the Box, Inc.*,

376 F.3d 305, 312 (5th Cir. 2004).  Under this three-part scheme, a plaintiff must first

establish a *prima facie* case of discrimination by showing: (1) she is a member of a

protected class; (2) she is qualified for the position at issue; (3) she suffered an adverse

employment action; and (4) she was replaced by someone outside the protected class

or was treated less favorably than others similarly situated.  *Okeye v. Univ. of Tex.*

*Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001);  *Rachid*, 376 F.3d at

312; *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000)

(citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981);  *Ward v.*

*Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997)).

     If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant

to proffer a legitimate, nondiscriminatory reason for its action.  *Rachid*, 376 F.3d at 312.

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff

to offer sufficient evidence to create a genuine issue of material fact that either: (1) the

defendant's reason is false and is a pretext for discrimination, or (2) that although the

defendant's reason is true the plaintiff's protected characteristic was a "motivating

factor" in its decision. *Id.*

     To determine whether plaintiff can survive a motion for summary judgment, the

court will consider "the strength of the plaintiff's *prima facie* case, the probative value of

the proof that the employer's explanation is false, and any evidence that supports the

employer's case and that properly may be considered on a motion for judgment as a

matter of law."  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148-49, 120

S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

## C.    Retaliation Standard

     Section 704 of Title VII states that "[It] shall be an unlawful employment practice

for an employer to discriminate against any of his employees . . . because he has made

a charge . . . [Title VII]."  42 U.S.C. § 2000e-3(a)(1994).  To establish a *prima facie* case

of unlawful retaliation under Title VII, Grennell must show (1) that she engaged in an

activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a casual link existed between the protected activity and the adverse employment action. *Washburn v. Harvey*, 504 F.3d 505, 509 (5ᵗʰ Cir. 2007) (citing *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5ᵗʰ Cir. 1983)).

Once the employee has established a *prima facie* case, the burden then shifts to the employer to demonstrate a legitimate, non-retaliatory reason for the adverse employment action. *Ajao v. Bed Bath and Beyond, Inc.*, 2008 WL 345505 (5ᵗʰ Cir. 2008), citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Once the employer does so, the burden of proof then shifts back to the employee to demonstrate that the employer's non-retaliatory purpose is "merely a pretext for the real, [retaliatory] purpose." *Id.*

## IV.    Analysis

### A.    Race Discrimination

#### 1.    Prima facie case

For her Title VII discrimination claim, Grennell must first establish that she is a member of a protected class, that she was qualified for the position, that she suffered an adverse employment action, and that these circumstances together establish an inference of discrimination on account of her race. Grennell's proof clearly satisfies the first three factors. She is an African-American, who was fired from her position with GIA. Although GIA now claims that Grennell was not qualified to maintain her position with the company, the defendant plainly thought enough of plaintiff to employ her for nearly three years, promote her to leadership posts, and reward her with pay raises

during her employment with the company.  Therefore, this court reasons that Grennell was qualified for the position.

Finally, plaintiff claims that she was replaced by Monica Hawthorne, a Caucasian female.  The defendant, however, states that "after the service of two interim managers, Kim Burns, an African-American female, was selected to replace plaintiff as the permanent billing office manager."  No matter the length of time Hawthorne served as the Billing Office Manager, GIA has confirmed that Grennell was replaced by a Caucasian female and, thus, Grennell has adduced her *prima facie* showing of race discrimination.  Therefore, this court is persuaded that plaintiff has met her minimal *prima facie* burden.

### 2.      GIA's Nondiscriminatory Reasoning

Since Grennell has made a *prima facie* case of discrimination, the burden of production shifts to GIA to produce evidence indicating non-discriminatory reasons for its decision.  *Alvarado*, 492 F.3d at 615-16.  The defendant may satisfy this burden by producing evidence, which taken as true, would permit a trier of fact to conclude that the defendant had a nondiscriminatory reason for the adverse action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

GIA asserts as its legitimate, nondiscriminatory reason, that starting in mid-2005, defendant began to receive complaints from patients who were dissatisfied with the service from front-desk personnel - one of the areas managed by plaintiff.  Windsor says that she met with plaintiff about the alleged poor performance of the front desk personnel and on August 3, 2005, counseled plaintiff about an excessive turnover of

employees who were supervised by plaintiff.  Then, on or about August 19, 2005,

during an unscheduled audit of accounts receivables, GIA says it discovered that

plaintiff had committed "multiple egregious and intentional violations of company

policy;"  to-wit, during this audit, GIA says it discovered that plaintiff had held cash and

checks in her office for a period of time instead of depositing patients' checks and other

receivables into GIA's bank account.  GIA also complains that several of its employees

came to Windsor to voice complaints about Grennell's deficiencies as a manager.  GIA

further accuses plaintiff of having interrogated employees under her supervision to

inquire as to whether any of the employees had made negative comments about her.

GIA says based upon these complaints, Windsor suspended plaintiff in order to

complete her investigation.  During her investigation, Windsor claims she spoke to at

least nine employees who were managed by Grennell and that each expressed

grievances regarding plaintiff and her managing style.  Shortly thereafter, GIA

terminated Grennell's employment, effective September 27, 2005.

> **3.      Grennell's Allegation of Pretext**

Grennell says defendant's nondiscriminatory reasons for her dismissal were

nothing more than pretext for unlawful, discriminatory conduct.  Grennell says that

GIA's declared reasons for terminating her employment (i.e., her poor performance and

domineering managing style) are pretextual, arguing that before she complained to

Windsor that she believed she was being discriminated against because of her race in

June 2005, she had not received any write-ups nor criticisms of her job performance.

Additionally, Grennell claims that she did not get an annual evaluation as did the other

managers, did not receive the same benefits, and was asked to perform tasks

regardless of the time involved while white managers had more leisure time at work.

Plaintiff has presented sufficient evidence to demonstrate that a genuine issue of material fact exists as to the true reason for her termination. Accordingly, the defendant's motion for summary judgment as to plaintiff's racial discrimination claim is denied.

## B.   Retaliation

To constitute actionable retaliation, an employer's action must be "materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). Grennell says that after complaining about race discrimination, over the next few months she was written up at least five times, and then fired, allegedly because of complaints from her subordinates.

To establish the causation element of her retaliation claim under Title VII, Grennell must present either "direct evidence of retaliation" or "circumstantial evidence creating a rebuttable presumption of retaliation." *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003). The Fifth Circuit has stated that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'casual connection' required to make out a *prima facie* case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Again, the temporal proximity must be close. *Ajao v. Bed Bath and Beyond, Inc.*, 2008 WL 345505 (5th Cir. 2008), citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S.Ct. 1508,

149 L.Ed.2d 509 (2001).

This court is persuaded that the temporal proximity between June 2005 and September 2005 is enough to establish the casual connection required for the plaintiff's *prima facie* case.  Plaintiff has sufficiently called into question defendant's legitimate, non-retaliatory reasons offered by the defendant.  Accordingly, this court finds that summary judgment on plaintiff's retaliation claim is not proper as a matter of law.  Even assuming *arguendo* that this temporal proximity is insufficient to establish a *prima facie* case, the court concludes that the additional evidence discussed below suffices to do so.

According to testimony by Josephine Anderson, who was the manager over the Endoscopy Center, no one complained about Grennell's job performance until Grennell complained about the preferential treatment a white manager, Michelle Emerick, was receiving.  Angela Jackson, another witness and one of Grennell's subordinates for over a year, testified that she never had any problems with Grennell as a manager, nor was she aware of any other subordinates who were having any problems with her.  These statements directly rebut the accusations of the defendant, and therefore ripens this issue for the trier of fact.

Viewing the evidence in the light most favorable to plaintiff, the court finds that plaintiff has established a *prima facie* case of retaliation, and the plaintiff has proffered evidence that the non-retaliatory reason given for her dismissal may be pretextual.

## V.  Conclusion

For the foregoing reasons, this court hereby denies the defendant's motion for

summary judgment.   The parties shall appear for trial on the merits.

SO ORDERED, this the 25th day of July, 2008.

s/ HENRY T. WINGATE
 CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:07-cv-3 HTW-LRA
Memorandum Opinion and Order